# UNITED DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ADRIENNE BURKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV00629 ERW (AGF) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Adrienne Burke's application for disability insurance income under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The action was referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

Plaintiff, who was born on December 16, 1945, and who had polio as a child, applied for benefits on July 21, 2004, claiming a disability onset date of April 15, 2003, due to a post-polio syndrome and venous insufficiency. After her application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 12, 2005, at which Plaintiff was represented by counsel. On October 17, 2005, the ALJ decided that Plaintiff could

perform her past work as a nurse, as she performed that job, and was thus not disabled under the Act. The Appeals Council of the Social Security Administration denied Plaintiff's request for review on February 8, 2006. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. Specifically, Plaintiff argues that the ALJ erred in assigning Plaintiff a residual functional capacity ("RFC") that did not consider Plaintiff's limited stamina and endurance, was not supported by medical evidence, and failed to include an assessment of Plaintiff's ability to kneel or crouch as required by her former work. Plaintiff also asserts that the ALJ selectively analyzed the medical evidence, ignoring comments supportive of Plaintiff's allegations of disability. Plaintiff asks that the case be remanded for a proper RFC determination and proper analysis of the record.

## BACKGROUND

**Work History and Application Forms**

The record indicates that from 1985 through 2002, Plaintiff earned approximately $20,000 to $25,000 per year as a registered nurse. Tr. at 51. Plaintiff reported in her Disability Report accompanying her application for benefits that she had polio in her feet when she was young and that due to post-polio syndrome, pain, and fatigue, she could currently not be on her feet more than two to three hours (presumably, per day). She represented that she stopped working on April 15, 2003, because she could no longer work due to her medical condition. Plaintiff reported that as a nurse from 1975 to 2003,

2

the heaviest items she lifted weighed 20 pounds, and that she would frequently lift items weighing up to 10 pounds. Tr. at 108-10.

In her Function Report, Plaintiff wrote that she limited the time she did errands, such as grocery shopping, to one and a half hours at a time, due to leg weakness. She wrote that she did various household chores, such as laundry and vacuuming, but that she had to pace herself with all chores, limiting the time she was on her feet at one time to 30 to 45 minutes, and that her husband did the heavier chores, such as mowing the lawn. Later on the same form, Plaintiff wrote that she had to limit each errand to 45 to 60 minutes and felt compelled to rest between errands. She wrote that she went out two or three times a week for socializing and that she "took part in activities fully as long as they did not involve a great amount of walking and standing." In a section asking the claimant to circle activities that her condition effected, Plaintiff circled lifting, standing, walking, and stair climbing. She did not circle squatting, bending, reaching, or kneeling. She wrote that she could not walk for more than one quarter of a mile or stand for more than 20 to 30 minutes without experiencing leg fatigue and aching, and needed to rest for about 10 to 15 minutes before resuming activity. Tr. at 87-92.

On the Work History Report, Plaintiff wrote that in her work as a visiting nurse from August 1992 to April 2003, each day she had to walk for up to three hours, stand for up to one half hour, sit for two to three hours, climb stairs for 10 minutes, stoop for one hour, kneel for two hours, crouch for one hour, and carry her nursing bag, which weighed 10 to 20 pounds. She added that she did not lift patients or carry "heavy objects."

3

Plaintiff also noted the more strenuous demands of her pre-1992 job as a hospital nurse. Tr. at 95-101.

In a Disability Report - Appeal completed on October 8, 2004, following the initial denial of benefits, Plaintiff wrote that in order to preserve her existing strength, she had to "strictly regulate activities according to the time and effort" and had to balance activities and rest. She wrote that her jobs as both hospital nurse and visiting nurse were "very physical and very active [and] required a proactive role in a fast paced setting. Cumulative fatigue and leg pain were a direct result sometimes taking more than a day to 'recover.'" Tr. at 76-82.

**Medical Record**

On October 22, 2002, Plaintiff complained of weakness to Andrew Larkin, M.D., and asked to see Nicholas Spellman, M.D., a specialist in post-polio syndrome. Tr. at 128. On December 27, 2002, Dr. Spellman examined Plaintiff upon referral by Dr. Larkin. Plaintiff reported to Dr. Spellman that she had been physically active in the past, hiking and cross-country skiing, but for the past five years noticed decreased walking endurance, "decreasing from 4 to 5 miles per day." She also complained about muscle fatigue and fatigue climbing stairs. She reported pain in her feet, but no paresthesias. At the time, Plaintiff was still working as a visiting nurse approximately three days per week. According to Dr. Spellman, Plaintiff reported that her job did not require heavy lifting and allowed her to sit for "extended periods of time."

Dr. Spellman noted that Plaintiff was doing well using TEDs (anti-embolism)

stockings following venous ligation performed approximately 25 years ago. He also noted a history of "intermittent" hypertension and depression. Plaintiff's medications included Celexa, Diovan, Allegra, and Xanax, all of which she took daily. Physical examination revealed full range of motion of the cervical spine, shoulders, elbows, hips, knees, and ankles; full upper-extremity strength; normal muscle tone; mild dextroscoliosis of the lumbar spine; bilateral hamstring tightness at approximately 60 degrees of flexion; full lower-extremity strength, except for some weakness in the hip flexors and hamstrings; and a normal gait pattern.

Dr. Spellman reported that Plaintiff had had paralytic polio at age seven and was unable to walk for nearly two months. She subsequently did well, with no functional residuals for over 40 years. Dr. Spellman diagnosed "mild post-polio syndrome." He opined that Plaintiff's weakness in her legs was "very subtle," but that it did represent "a change from baseline and more than would be expected by aging alone." Plaintiff did not have significant back or neck pain despite mild scoliosis. Dr. Spellman stated that Plaintiff's post-polio syndrome symptoms were progressing "very slowly," such that annual follow-up and muscle-strength testing every other year would be adequate. He recommended "energy conservation with frequent breaks" and not exercising up to or past the point of fatigue/muscle pain. He referred Plaintiff for physical therapy to maximize endurance, establish an exercise program, and reduce hamstring contractures.

Tr. at 119-22.[1]

On October 21, 2003, Plaintiff went to see Stephen Sanders, M.D., due to palpitations she had been experiencing off and on for the past six months, with symptoms increasing in the last month. Plaintiff reported that she walked on a regular basis, and while walking had no symptoms. Following a normal examination, Dr. Sanders advised that Plaintiff continue using Xanax, to use Metropol on a trial basis, and to return for follow-up in one month. Tr. at 134-36. At the follow-up visit on November 21, 2003, Dr. Sanders noted that the palpitations had resolved. Tr. at 134.

The results of a consultative neurological examination conducted on August 2, 2004, by Patrick Hogan, M.D., were "completely normal." Dr. Hogan opined that nevertheless, Plaintiff might have "easy fatigability" and might well have post-polio syndrome. Dr. Hogan also reported that the results of a mental status examination were within normal limits. Tr. at 139-41.

On September 7, 2004, a state agency non-examining medical consultant completed a physical RFC assessment form in connection with Plaintiff's application for benefits. The consultant indicated that Plaintiff could lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of about six hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; push and/or pull without limitation; occasionally climb stairs; frequently

---

[1] As the ALJ observed, the file contains no record of medical treatment from this date until October, 2003.

balance, stoop, kneel, crouch, and crawl. The consultant found Plaintiff's allegations of a disabling condition only partially credible due to the normal neurological exam and the notation in the record that no difficulties were observed by the person in the field office when Plaintiff applied for benefits. Tr. at 68-75.

**Evidentiary Hearing of September 12, 2005**

Plaintiff, who was represented by counsel, testified to the following. She was 59 years old, lived with her husband and their dog, was 5'1", and weighed 118 pounds. She completed four years of college and then obtained a degree as a registered nurse. Plaintiff worked for 25 to 30 years as a nurse, first as a hospital nurse and more recently, as a visiting nurse. As a visiting nursing, she would drive to see seven or eight patients per day in their homes, and provide care and instructions about medications. She was on her feet for about 75 percent of the day, and would lift things weighing 10 to 15 pounds. When she had to move patients who were too heavy for her, she would ask for assistance from others. Plaintiff stated that she stopped working in the spring of 2003 because the weakness and pain in her legs made her feel that she was overdoing things. She also had difficulty climbing stairs to patients' places of residence. Plaintiff last worked as a hospital nurse in 1992. In this job, she spent 90 percent of the day on her feet, running to answer calls and giving out medications. At the time of the hearing, Plaintiff was helping her husband, who was a builder/handyman, organize his bills, for about an hour and a half per week. Tr. at 157-63.

Plaintiff believed that the weakness and pain in her legs were due to post-polio

7

syndrome. In the past, she would go hiking with her husband, and could help him build and renovate homes, but about five or six years prior to the hearing, she noticed that she felt totally exhausted after hiking and that it took her "a long time" to regain her strength. That week she went to see a doctor, who diagnosed post-polio syndrome. The doctor advised her to wear support hosiery, elevate her feet periodically, balance rest and activity, and avoid her usual long walks. There were some medications for symptom control, but because they were "heavy duty" with possible side-effects, neither her regular doctor nor a specialist she saw advised her to take them. Basically, the treatment for post-polio syndrome was to rest and not to overdo things. Tr. at 163-65.

Upon learning about the syndrome, Plaintiff started to work per diem and part-time, approximately 20 to 30 hours per week. She stopped working when the physical demands of her job, such as getting in and out of the car 10 times a day and walking to the patient's homes, left her no time to rest or elevate her feet, and she did not want to end up in a wheelchair by overdoing things now. Plaintiff testified that when she engaged in heavy work for more than half an hour, like vacuuming the whole house, her legs would start to feel weak and ache. Therefore, she tried to do only light work and rest after periods of activity. Her husband did the vacuuming, and Plaintiff would dust, clean the kitchen and bathroom, sweep, wash a few dishes, and put laundry in the washer. Her husband also did most of the cooking, with her helping while sitting. She fed and brushed the dog and took the dog out in the yard and went around the house, but not for the longer walks. Tr. at 166-69.

Sometimes, Plaintiff spent time with her grandchildren, ages 9 and 11, watching movies and going swimming, which was a good activity for her body. Because she could not walk for a long time, she did not bring them to places like the zoo. Plaintiff served as a trustee for her neighborhood which involved attending meetings once every other month. She did drive but would feel tired and stiff after about three hours and needed to get out and stretch. She also read, wrote letters, and played music during the day. In addition, she worked in her vegetable and flower garden every few days, doing things like weeding, while sitting. Plaintiff flew to California "a lot" to see her mother. She took non-stop flights, and if she had to walk long distances from one gate to another, she had difficulty. But she had not yet asked for a wheelchair and hoped she would never have to. Tr. at 166-70.

Plaintiff testified that 30 years ago, she had a vein removed from each leg, and that she felt that this contributed to the problems with her legs and her inability to work. Currently, she could comfortably lift or carry up to 10 pounds. If she carried more, her legs would get tired quicker. It was easier for her to walk than stand. She could walk three blocks or half an hour before needing to rest for about half an hour. Recently she went to the Botanical Gardens with friends and ended up being on her feet and walking for about two and one half hours, after which she could do nothing for the rest of the day. Plaintiff stated that she could stand in one place for about 20 minutes, and needed to get up and stretch for about 15 minutes after sitting for two hours, after which she could continue to sit for another two hours. Plaintiff added that she also needed time to elevate

9

her legs, even when sitting, all to keep her legs in good health for as long as she could. Tr. at 170-74.

In response to the ALJ's question, Plaintiff testified that she "did have some physical therapy" upon referral by her doctor. She was taught exercises that encouraged circulation and stretched her muscles without wearing them out, and she was doing these exercises on a daily basis. Tr. at 174-175. Plaintiff left her last job when she and her husband moved to Missouri. After the move, she applied for new jobs, such as as a part-time librarian, but did not get hired. Tr. at 175-76.

Plaintiff had not seen her doctor for the post-polio syndrome in 2005 because the only treatment was to conserve energy. Plaintiff also mentioned that she would go grocery shopping if it could be done within 20 or 30 minutes; otherwise, her husband would do the shopping while she waited in the car. Tr. at 176-77.

**ALJ's Decision**

The ALJ found that Plaintiff had the impairment of "residuals from childhood polio," and that this was a severe impairment in that it was more than a slight abnormality and had more than a minimal effect on Plaintiff's ability to perform work-related activities. The ALJ found, however, that this impairment did not meet or medically equal any of the presumed-disabling impairments listed in the Commissioner's regulations. The ALJ proceeded to consider whether Plaintiff had the RFC to perform her past work or other work, noting the relevant factors, as set forth in Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), in evaluating Plaintiff's complaints. The ALJ found that Plaintiff's

allegations of symptoms precluding all work were not fully credible. In support of this finding, the ALJ cited Dr. Spellman's December 27, 2002 opinion that Plaintiff's post-polio symptoms were only mild and progressing very slowly; Dr. Sanders's October 21, 2003 report noting no significant symptoms, and not recommending any limitation of activities; and Dr. Hogan's August 2, 2004 examination results, which failed to find any clinical evidence of any significantly limiting impairment. Tr. at 13-15.

The ALJ found notable Plaintiff's lack of regular and sustained treatment, there being no evidence in the record that she had seen Dr. Sanders since October 2003. The ALJ further stated that inconsistencies in Plaintiff's statements detracted from her overall credibility. The ALJ pointed to two inconsistencies: first, Plaintiff testified that she could only stand for 15 to 20 minutes, but she also stated that she grocery shopped for 20 to 30 minutes; second, she reported that she had recently gone to the Botanical Gardens where she was on her feet for two and one half hours with a rest break, but in her July 30, 2004 daily activities report, she wrote that she had to limit the time on her feet to no longer than 30 to 45 minute intervals. The ALJ then reviewed Plaintiff's testimony about her daily activities, and concluded that she appeared "to lead a fairly active lifestyle," and engaged "in a wide range of activities, which did not suggest an individual precluded from all sustained work activity by impairment-related limitations." Tr. at 15-16.

The ALJ found that Plaintiff's venous insufficiency was not a severe impairment. The ALJ noted that while Plaintiff testified that her job as a visiting nurse involved 75 percent walking, she told Dr. Spellman in December 2002 that her job did not require any

11

heavy lifting and allowed her to sit for extended periods of time. Also noted by the ALJ was the fact that Plaintiff quit her job as a visiting nurse shortly before she moved to Missouri, suggesting that she "may have quit for reasons other than her physical inability to do the work." Tr. at 16-17.

The ALJ recognized that Plaintiff's strong work history supported her disability claim, but he found that the other factors he had noted regarding the credibility of Plaintiff's allegations outweighed this consideration. He found that Plaintiff had the RFC to lift/carry up to 20 pounds occasionally and up to 10 pounds frequently, sit without limitation, and walk/stand for at least four hours in an eight-hour workday. The ALJ noted that these capabilities coincided with the Commissioner's definition of "light work" found at 20 C.F.R. § 404.1567(b). He stated that in arriving at this RFC, he considered the state agency medical consultant's opinion of September 7, 2004, which found that Plaintiff had even greater exertional capabilities. Tr. at 16.

Based upon Plaintiff's representations in her Work History Report that as a nurse from August 1992 to April 2003, she had to walk for up to three hours and stand for up to one half hour in an eight-hour work day, and lift up to 20 pounds, the ALJ concluded that Plaintiff could perform the functional demands of that job, and was therefore not disabled.

**DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must affirm

the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir.1995)).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Both the impairment and the inability to engage in substantial gainful employment must last or be expected to last for not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 217-22 (2002).

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine whether a claimant is disabled. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe

13

impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in the Commissioner's regulations. If the claimant's impairment is equivalent to a listed impairment, the claimant is conclusively presumed to be disabled. Otherwise, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work, if any. If the claimant has past relevant work and is able to perform it, either as it is generally performed or as she performed it, she is not disabled. If she cannot perform her past relevant work or has no past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Commissioner's Medical-Vocational Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment. Where a claimant

cannot perform the full range of work in a particular category listed of work due to nonexertional impairments such as pain, the ALJ cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony of a vocational expert.

Here the ALJ decided at step four that Plaintiff could perform her past work as a visiting nurse, as she performed it in the past.

**Assessment of Plaintiff's RFC**

Plaintiff argues that the ALJ erred in assigning Plaintiff an RFC that did not consider Plaintiff's limited stamina and endurance, was not supported by medical evidence, and failed to include an assessment of Plaintiff's ability to kneel or crouch as required by her former work. A disability claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."

The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for determining a claimant's RFC. Id.

Here, the ALJ concluded that Plaintiff had the RFC to lift/carry up to 20 pounds frequently and 10 pounds occasionally, sit without limitation, and walk/stand for at least four hours in an eight-hour workday. The Court agrees with the Commissioner that this RFC, specifically the walk/stand aspect, incorporates an endurance finding by the ALJ. Plaintiff also argues that in determining Plaintiff's RFC, the ALJ selectively analyzed the medical record, ignoring evidence that supported Plaintiff's claims. Based upon its own review of the medical record, the Court concludes that the ALJ's review thereof was by and large accurate and fair. Some of the discrepancies noted by Plaintiff, such as the ALJ's failure to mention Dr. Spellman's finding of weakness in Plaintiff's hip flexors and hamstrings, and the ALJ's labeling Plaintiff's impairment "residuals of childhood polio," rather than "post-polio syndrome," are of no real consequence. The ALJ's failure to note Dr. Hogan's opinion that despite a normal neurological exam, Plaintiff might have "easy fatigability" and post-polio syndrome is also of little significance in light of the ALJ's finding that indeed Plaintiff had a severe impairment in this regard.

Importantly, none of Plaintiff's examining physicians recommended that Plaintiff should refrain from working on a full-time basis. Although Dr. Spellman recommended frequent breaks, he did not suggest that Plaintiff give up her then-current three-day-a-week job as a visiting nurse, or indicate in any way that she could or should not increase her work to full time. As the ALJ noted, the fact that Plaintiff left that job because she moved also supports the ALJ's finding that she was not disabled.

Plaintiff's argument that the ALJ's RFC determination is not based on any medical

evidence also fails. As noted, an RFC is to be based on all relevant evidence, but it "remains a medical question" and "'some medical evidence must support the determination of the claimant's [RFC].'" Krogmeier, 294 F.3d at 1023 (quoting Hutsell v. Massanari, 259 F.3d 707, 711, 712 (8th Cir. 2001)). The ALJ is therefore required to consider at least some supporting evidence from a medical professional. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

Here the ALJ cited Dr. Spellman's December 27, 2002 opinion that Plaintiff's post-polio symptoms were only mild and progressing very slowly; Dr. Sanders's October 21, 2003 report noting no significant symptoms, and not recommending any limitation of activities; and Dr. Hogan's August 2, 2004 examination results, which failed to find any clinical evidence of any significantly limiting impairment. The ALJ also relied upon the state agency medical consultant's RFC assessment, and although this consultant did not examine Plaintiff, his opinion constitutes sufficient supporting evidence by a medical consultant, in light of the absence of any contrary expert opinion or expert opinion of disability. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (explaining that where there was no medical opinion of disability, the ALJ properly considered the available medical evidence and the plaintiff's testimony in determining the plaintiff's RFC, even though the record did not contain a specific medical opinion as to the plaintiff's RFC); Meares v. Barnhart, 2003 WL 22283913, at *11 (E.D. Mo. Aug. 29, 2003) (holding that where there is no examining source who opined as to the plaintiff's lifting capacities, it was well within the ALJ's authority to rely on the RFC provided by a

17

state agency non-examining medical consultant).

Plaintiff also argues that the ALJ's RFC assessment is flawed because it does not include an assessment of Plaintiff's capacity for kneeling and crouching. However, as noted above, on her Function Report accompanying her application for benefits, Plaintiff did not circle squatting, bending, reaching, or kneeling as having been affected by her allegedly disabling condition. Tr. at 92. In sum, the Court concludes that the ALJ's RFC assessment is proper and supported by substantial evidence in the record.

**Plaintiff's Ability to Perform Her Past Work**

Plaintiff maintains that because the ALJ's RFC determination was incomplete, the ALJ did not make the required comparison between the demands of Plaintiff's past work as a visiting nurse and her exertional abilities. In determining whether a claimant can perform her past relevant work, an ALJ must compare the limiting effects of the claimant's impairments with the demands of such work. Zeiler, 384 F.3d at 936 (citing Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991) (where there is no evidence of the demands of a plaintiff's past relevant work, a conclusory statement that the plaintiff can perform past work, does not constitute substantial evidence that the plaintiff is able to return to her past work)); Kirby v. Sullivan, 923 F.2d 1323, 1327 (8th Cir. 1991). An ALJ may rely on a plaintiff's own description of her past duties in making these findings. Zeiler, 384 F.3d at 936; Riley v. Apfel, 198 F.3d 251 (table), 1999 WL 758662, at*1 (8th Cir. Sept. 22, 1999) (per curiam) (affirming Commissioner's finding that the plaintiff could perform his past work where the plaintiff's description in his vocational report of

the demands of his previous position was consistent with the ALJ's RFC findings). Furthermore, the record with regard to a plaintiff's past work need not be "developed in full detail," as long as there is evidence that the past work involved activities that the plaintiff could perform. Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990).

Here, as noted above, Plaintiff wrote in her Disability Report that as a nurse from 1975 to 2003, the heaviest items she lifted weighed 20 pounds, and that she would frequently lift items weighing up to 10 pounds. Tr. at 108-10. On her Work History Report, Plaintiff wrote that in her work as a visiting nurse from August 1992 to April 2003, each day she had to walk for up to three hours, stand for up to one half hour, sit for two to three hours, climb stairs for 10 minutes, stoop for one hour, kneel for two hours, crouch for one hour, and carry her nursing bag, which weighed 10 to 20 pounds. She added that she did not lift patients or carry heavy objects. Tr. at 95-101. And according to Dr. Spellman's December 27, 2007 evaluation, Plaintiff reported that her then-current job as a visiting nurse did not require heavy lifting and allowed her to sit for "extended periods of time." Tr. at 119. Based upon these descriptions of her past duties, and the supported findings as to her RFC, there is sufficient basis in the record upon which to conclude that Plaintiff could perform her past work.[2]

---

[2] Although not addressed by the ALJ, the Court believes that the record would clearly support a conclusion that Plaintiff could perform sedentary work, which, under the Commissioner's regulations, involves lifting no more than 10 pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; sitting; and occasionally walking and standing. 20 C.F.R. § 404.1567(a). "Occasionally" in this context generally means no more than about two hours of an eight-hour workday.

## **CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

The parties are advised they have 10 days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 3rd day of May 2007.

---

Unskilled sedentary work also involves other activities such as seeing, manipulation, understanding, remembering, and carrying out simple instructions. Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *6-7 (July 2, 1996).